# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

VINCENT TRINIDAD**,**

     Plaintiff,

     v.

PDD HOLDINGS, INC., a Cayman Islands
Corporation, WHALECO, INC., a Delaware
Corporation, and DOES 1-10,

     Defendants.

Case No. 1:23-cv-04786

Hon. Sharon Johnson Coleman

JURY TRIAL DEMANDED

## MEMORANDUM IN SUPPORT OF WHALECO, INC.'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

   I.   Temu's Marketplace Platform ........................................................................... 3

   II.  Vincent Trinidad's Alleged Copyrights and the DMCA Takedown Request ................... 5

   III. Temu Expeditiously Addressed the June 8 DMCA Notice ............................... 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 7

   I.   Whaleco Is Not Liable for Direct Copyright Infringement ................................ 7

   II.  Whaleco Qualifies for Safe Harbor under the DMCA ....................................... 8

       A.  Whaleco Is a Quintessential "Service Provider" Under the DMCA ............ 9

       B.  Whaleco Satisfies the Threshold Requirements of § 512(i) ....................... 9

       C.  Whaleco Satisfies the Requirements of § 512(c) ..................................... 10

CONCLUSION ............................................................................................................. 15

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................7

*Arlington Specialties, Inc. v. Urb. Aid, Inc.*,
   No. 13 CV 4180, 2014 U.S. Dist. LEXIS 138909 (N.D. Ill. Sept. 30, 2014) (Coleman, J.),
   *aff'd*, 847 F.3d 415 (7th Cir. 2017)...................................................................7

*BWP Media USA, Inc. v. Clarity Digit. Grp., LLC*,
   820 F.3d 1175 (10th Cir. 2016) .........................................................................14

*Capitol Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 500 (S.D.N.Y. 2013),
   *aff'd in relevant part and vacated in part*, 826 F.3d 78 (2d Cir. 2016)..............9, 12

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004)............................................9, 11, 13, 14

*CoStar Grp., Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) .............................................................................14

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991)...........................................................................................8

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) .............................................................................8

*Hart v. Amazon.com, Inc.*,
   No. 15-C-01217, 2015 U.S. Dist. LEXIS 164627 (N.D. Ill. Dec. 8, 2015).............8

*Hendrickson v. Amazon.com, Inc.*,
   298 F. Supp. 2d 914 (C.D. Cal. 2003) ...............................................................14

*Hendrickson v. eBay, Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001) .............................................................15

*Ilustrata Servicos Design, Ltda. v. PDD Holdings, Inc. et al*,
   No. 1:23-cv-04824 (N.D. Ill. Jul 25, 2023) .........................................................1

*In re Aimster Copyright Litig.*,
   252 F. Supp. 2d 634 (N.D. Ill. 2002),
   *aff'd*, 334 F.3d 643 (7th Cir. 2003)....................................................................9

*Io Grp., Inc. v. Veoh Networks, Inc.*,
  586 F. Supp. 2d 1132 (N.D. Cal. 2008) ....................................................10, 11, 13

*Kinsley v. Udemy, Inc.*,
  No. 19-cv-04334-JSC, 2021 U.S. Dist. LEXIS 62885 (N.D. Cal. Mar. 31, 2021).................10

*Lord v. PDD Holdings, Inc. et al*,
  No. 1:23-cv-04729 (N.D. Ill. Jul 21, 2023) ........................................................1

*Milburn v. PDD Holdings, Inc. et al*,
  No. 1:23-cv-04785 (N.D. Ill. Jul 24, 2023) .......................................................1

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  693 F. App'x 879 (Fed. Cir. 2017) ................................................................14

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  No. C13-1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015)..................14

*Obodai v. Demand Media, Inc.*,
  No. 11 Civ. 2503 (PKC), 2012 U.S. Dist. LEXIS 83109 (S.D.N.Y. June 13, 2012) .............12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...................................................................15

*Steinmetz v. Shutterstock, Inc.*,
  629 F. Supp. 3d 74 (S.D.N.Y. 2022)................................................................7

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  576 F. Supp. 2d 463 (S.D.N.Y. 2008),
  *aff'd in part*, 600 F.3d 93 (2d Cir. 2010) ......................................................11

*Trinidad v. PDD Holdings, Inc. et al*,
  No. 1:23-cv-04786 (N.D. Ill. Jul 24, 2023) .......................................................1

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
  718 F.3d 1006 (9th Cir. 2013) ................................................................11, 13

*Ventura Content, Ltd. v. Motherless, Inc.*,
  885 F.3d 597 (9th Cir. 2018) ................................................................7, 9, 13

*Wang v. PDD Holdings Inc. et al*,
  No. 1:23-cv-04760 (N.D. Ill. Jul 24, 2023) .......................................................1

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2011),
  *aff'd*, 569 F. App'x 51 (2d Cir. 2014)...........................................................7

## STATUTES AND RULES

17 U.S.C. § 512(i) ...........................................................................................10

17 U.S.C. § 512(c) .................................................................................... passim

17 U.S.C. § 512(k) ..............................................................................................9

Fed R. Civ. P. 56(a) ...........................................................................................6

## MISCELLANEOUS

Digital Millennium Copyright Act............................................................ passim

# INTRODUCTION

Summary judgment should be granted in Whaleco's favor. Whaleco operates the Temu marketplace platform and acts as a service provider for **third-party** merchants who sell on the platform. A critical element of direct copyright infringement—the only claim against Whaleco—is that defendant *itself* engaged in copying the alleged work, not third parties using the defendant's site. Here, none of the allegedly infringing listings were posted and/or products sold by Whaleco, and Whaleco does not own or sell any products under its brand at all. Trinidad's claim thus fails on this ground alone.

Moreover, summary judgment is warranted because Whaleco is a classic service provider covered by the safe harbor of the Digital Millennium Copyright Act ("DMCA"). Plaintiff Trinidad sued over a single DMCA takedown notice. Temu expeditiously took down all the infringing listings. Indeed, as detailed below, Temu is a responsible marketplace, whose business operations are consistent with industry standards. Notably, the DMCA notice was sent on Trinidad's behalf by the ultra-fast fashion giant Shein. Ever since Temu's launch in September 2022, Shein has regarded Temu as its largest competitor and biggest threat. Within days of the filing of this case, Shein brought four other proxy litigations before this Court using the same playbook.[1] Including the current case, all five cases were brought by persons alleged to have licensed their works to Shein. In all but one, Shein registered copyrights on the plaintiffs' behalf. In all but one, the alleged copyrights were registered by Shein on the same day. And in all cases, Shein submitted the DMCA notices to Temu for the plaintiffs with the exact same content as Shein's other DMCA

---

[1] *Ilustrata Servicos Design, Ltda. v. PDD Holdings, Inc. et al*, No. 1:23-cv-04824 (N.D. Ill. Jul 25, 2023); *Lord v. PDD Holdings, Inc. et al*, No. 1:23-cv-04729 (N.D. Ill. Jul 21, 2023); *Milburn v. PDD Holdings, Inc. et al*, No. 1:23-cv-04785 (N.D. Ill. Jul 24, 2023); *Trinidad v. PDD Holdings, Inc. et al*, No. 1:23-cv-04786 (N.D. Ill. Jul 24, 2023); *Wang v. PDD Holdings Inc. et al*, No. 1:23-cv-04760 (N.D. Ill. Jul 24, 2023).

notices and claimed to be the "owner" or "licensee." None of the DMCA notices named the plaintiffs as the copyright owner—in two cases, Shein claimed itself to be the owner of the copyrights, and in one case, it has now come to light that Shein was not even licensed at the time of the notice. Another common denominator between the five cases is the lack of any commercial injury or reason to pursue the case: it is undisputed that Temu addressed the isolated instances of third-party infringement by expeditiously removing the listings.

The true motivation behind these cases is inescapable—a competing platform orchestrating damage to Temu's business and reputation by seeking to portray Temu as a non-compliant marketplace and harm Temu's relationships with sellers and rights owners. Indeed, in the few weeks leading up to the DMCA notice containing Trinidad's alleged works, Temu received takedown requests from Shein for over 4,500 third-party product listings on the U.S. Temu site. Scores of the takedowns from Shein either included unclickable links (including three of the five cases here), incorrect declaration under penalty of perjury (including three of the five cases here), invalid notices, and/or wrong URLs pointing to products unrelated to the images in the takedown notices, requiring additional review and resources. Shein took these actions deliberately (these lawsuits included) to harm Temu—all because Temu empowers its merchants (who sometimes are also Shein's suppliers) with efficient platform solutions, global market access, and other benefits that provide a more attractive platform for the merchants than Shein's platform. At bottom, this case is driven not by the desire to protect intellectual property rights, but by Shein's misuse of the judicial process to stifle competition and limit consumers' shopping options. Having complied with the DMCA requirements regardless of the flaws in the DMCA notices, however, Whaleco is protected by the DMCA safe harbor and is entitled to a judgment in its favor as a matter of law. No ground exists for this manufactured dispute to proceed and take up further judicial resources.

# FACTUAL BACKGROUND

## I.  Temu's Marketplace Platform

Whaleco controls Temu, an online marketplace platform that hosts unaffiliated third parties who list and sell their products on the platform and operate independent storefronts.  Statement of Undisputed Material Facts ("UF") ¶ 1.  Whaleco does not, nor has it ever, sold goods on Temu.  UF ¶ 3.

Third-party sellers are in control of what products they choose to sell on the Temu platform.  UF ¶¶ 4-5.  As only the third-party sellers know which products they are offering for sale, sellers are responsible for uploading all product details and information for inclusion in the product listing.  UF ¶ 5.  Sellers are also responsible for providing product images to be displayed on the listing page.  UF ¶ 10.  In connection with their use of Temu's marketplace services, sellers review and accept the terms of the Seller Service Agreement ("SSA").  UF ¶ 6.  Sellers guarantee and promise that (1) all product information uploaded by the seller is truthful, (2) the products sold by the seller are authentic, not counterfeit or infringing, (3) the quality of the products sold by the seller can meet consumers' expectations, (4) the seller will provide returns and refunds services in accordance with Temu's policies, (5) the seller will "respond actively to consumer demands and respond to consumer inquiries in a timely manner," and (6) the seller "owns and has all necessary rights in and to the Goods sold on the Temu Platform."  UF ¶ 7.  Sellers acknowledge they are "solely responsible for handling any claims or disputes arising from the infringement of the intellectual property rights and/or other relevant rights and interests of others during the performance of this Agreement and shall be independently liable."  UF ¶ 9.

Temu also offers fulfillment services similar to Amazon's through its affiliate, Shanghai Yucan Information Technology Co., Ltd. ("Yucan"), before products are shipped to consumers via third-party delivery providers like DHL and FedEx.  UF ¶ 13.  Sellers retain title to their goods

throughout the product listing and order fulfillment process. UF ¶ 14. At no time does Temu take title to the products. *Id*.

Temu conducts a cursory review of the product listing for technical issues, offensive content, and obviously infringing material. UF ¶¶ 16-17. As a responsible marketplace, Temu (like its other marketplace counterparts) invests in proprietary mechanisms, technology, and resources to attempt to identify and remove counterfeits from its platform. UF ¶ 18. That said, because Temu is a trusted platform, as of the date of this filing, there are currently more than 80 million product images available on the U.S. site, and more than 100,000 images are uploaded on the U.S site of the Temu marketplace daily. UF ¶ 2. Thus, Temu does not and cannot possibly know whether every individual product, photograph, logo, or design is subject to intellectual property protection and/or whether the seller has the necessary authorizations. UF ¶ 19. In fact, Temu cannot analyze every image it receives from third-party sellers, compare the submitted image to all other copyrighted images in existence, and/or decide whether each submitted image infringes someone's intellectual property rights. *Id*. As such, like other marketplace platforms, Temu relies on well-established takedown procedures through which brand owners may request removal of infringing content. UF ¶ 23.

Temu has a policy of protecting third-party intellectual property rights on its platform and has taken allegations of infringement on its platform very seriously since its launch. Temu has a dedicated IP protection email that can be used to notify the platform of alleged infringement, including takedown notices under the DMCA.[2] UF ¶ 24. Once a DMCA notice is received, Temu's IP Protection team expeditiously processes the takedowns. UF ¶¶ 30-39. Temu also maintains a repeat infringer policy, which Temu has informed third-party sellers of and has

---

[2] In September 2023, Temu switched to an online portal where rights holders (or those acting on their behalf) may submit intellectual property complaints. UF ¶ 24.

implemented against third-party sellers by taking action against repeat offenders when necessary and appropriate.  UF ¶¶ 25-27.  Temu also provides rights holders with the contact information for a designated agent to receive notices of claimed copyright infringement (the "DMCA Agent").  UF ¶ 28.  Whaleco lists its DMCA Agent on the Temu website and in the United States Copyright Office's DMCA Designated Agent Directory.  UF ¶ 29.

## II.      Vincent Trinidad's Alleged Copyrights and the DMCA Takedown Request

Plaintiff Vincent Trinidad is a participant in the SHEIN X incubator program, which purports to support artists working with Shein.  Dkt. No. 1 ("Complaint"), ¶ 24.  With the help of Shein, Plaintiff allegedly obtained copyrights on three 2-Dimensional artworks.  Exhibit A to Complaint.  The works titled "Catsune," "Neko Shogun," and "Catana" were registered by Shein representatives on Trinidad's behalf at the U.S. Copyright Office on April 3, 2023 ("Works").  *Id*. Plaintiff is listed as the author and claimant of the three resulting copyright registrations.  *Id*.[3] Trinidad's Works were licensed to Shein on June 24, 2021.  Ex. D at Response No. 2.

On June 8, 2023, Temu received a DMCA takedown request from Shein seeking removal of 17 third-party seller product listings (the "June 8 DMCA Notice"), 16 of which were based on Trinidad's Works.  UF ¶ 30.  In the notice, Shein alleged it was the "owner and exclusive licensee of the copyright(s) involved," and Trinidad was not mentioned as the copyright owner.  *See* Ji Decl., Ex. 1 at 1.  All works were set out under the column named "SHEIN X Artwork" with reference to Shein URLs.  *See* Ji Decl., Ex. 1 at 2.  Temu removed all 17 product listings by July 25, 2023.  UF ¶ 32.

## III.     Temu Expeditiously Addressed the June 8 DMCA Notice

In the weeks leading up to the June 8 DMCA Notice, Temu received DMCA takedown

---

[3]  Temu accepts these facts as true only for purposes of this motion and does not concede that these facts are correct and/or that Trinidad owns any valid copyrights.

requests from Shein for over 4,500 third-party product listings on the U.S. Temu site. UF ¶ 33. This sheer volume of takedown requests sent by Shein (ostensibly in the name of helping artists and creators[4]) puts the takedown time for Trinidad's notice into proper context. The processing of DMCA notices received from Shein was challenging and time consuming as many of the notices contained errors that required additional review time and attention. UF ¶ 35. For example, more than 65% of the product listings handled from June 9, 2023 to July 25, 2023 included non-clickable links (for which Temu had to manually type each URL for the image on Shein's website and the product listing on Temu's site to verify the request). UF ¶ 36. Additionally, a DMCA notice received on May 15, 2023, and handled during this period, used one Shein URL for a "Baby Girl Cartoon Dinosaur One Piece Swimsuit," to assert infringement against over 560 product listings on Temu's U.S. site, most of which were different from a child's swimsuit. UF ¶ 37. Despite these deliberately created difficulties, Temu managed to process all the above product listings from Shein by July 25, 2023, averaging over 100 per workday. UF ¶ 39.

Notwithstanding the large number of takedowns submitted around the time of the June 8 DMCA Notice (and the challenges with the format of the takedowns), Temu proceeded as expeditiously as it could and removed the product listings at issue within 33 business days. UF ¶ 32. To the best of Temu's knowledge and based on its good-faith investigation, there are no other outstanding takedown requests from Trinidad (or anyone acting on his behalf) in connection with any works at issue in this litigation. UF ¶ 40.

## LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining

---

[4] Although not pertinent for this summary judgment, Temu disputes that Shein's DMCA notices and practices were valid.

whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But to defeat the motion for summary judgment, the non-moving party may not rely on mere allegations. *Id.* at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."). Summary judgment can be appropriate where the plaintiff's claims fail based on the undisputed facts even early in, or prior to, discovery. *See, e.g.*, *Arlington Specialties, Inc. v. Urb. Aid, Inc.*, No. 13 CV 4180, 2014 U.S. Dist. LEXIS 138909 (N.D. Ill. Sept. 30, 2014) (Coleman, J.), *aff'd*, 847 F.3d 415 (7th Cir. 2017) (granting defendant's motion for summary judgment on trade dress infringement early in discovery).

Summary judgment is particularly appropriate where a plaintiff alleges copyright infringement and there is no genuine dispute the defendant may take advantage of the safe harbor provision of the DMCA. 17 U.S.C. § 512(c); *see Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 77 (S.D.N.Y. 2022) (granting summary judgment for service provider and stating that where a service provider invokes the safe harbor provision after removing the accused work, "the sole question is whether Defendant is eligible for the Safe Harbor"); *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) (affirming summary judgment for defendant based on safe harbor provisions); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724 (S.D.N.Y. 2011), *aff'd*, 569 F. App'x 51 (2d Cir. 2014) (same).

## **ARGUMENT**

### I. **Whaleco Is Not Liable for Direct Copyright Infringement**

Independent of its eligibility for the DMCA safe harbor, the undisputed facts show Whaleco cannot be held liable for direct copyright infringement. To prevail, Trinidad must provide evidence that (1) he is the owner of a valid copyright and (2) that Whaleco copied elements

of the copyrighted material. *See Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). As to the second element, a showing of direct copyright infringement requires that the defendant ***itself*** engaged in copying the material at issue, not third parties using the defendant's site. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 760 (7th Cir. 2012) (explaining that a service provider whose platform was used to host allegedly infringing videos was not the direct infringer, the individuals uploading the videos were); *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 U.S. Dist. LEXIS 164627, at *6-10 (N.D. Ill. Dec. 8, 2015) (dismissing a claim for direct copyright infringement against Amazon where the plaintiff did not properly allege Amazon itself, rather than third parties using Amazon's site, had copied copyrighted works).

Trinidad has neither alleged nor shown that Whaleco engaged in any copying of the Works. At most, the allegations show potential copying by third-party sellers on the Temu platform. *See* Complaint ¶¶ 5, 33 (depicting alleged screenshots from the Temu website of product listings by third parties including Zero Go, Step men clothing, and Dark Knight). Activities by these third-party sellers cannot give rise to direct copyright infringement claims against Whaleco as a service provider. *See Hart*, 2015 U.S. Dist. LEXIS 164627, at *6-10. As this is the *only* claim against Whaleco, summary judgment is proper on this ground alone independent of the DMCA safe harbor.[5]

## II.     Whaleco Qualifies for Safe Harbor under the DMCA

Section 512(c) of the DMCA permits service providers to avoid monetary liability "for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C.

---

[5] Trinidad also alleges direct infringement by PDD Holdings (Complaint, ¶¶ 45-52) to which the same arguments would apply. PDD Holdings has separately moved to dismiss *all* claims due to lack of personal jurisdiction, and summary judgment is only sought for Whaleco. Dkt. No. 26.

§ 512(c)(1). To invoke this "safe harbor," a defendant must establish (i) that it is a "service provider" under the statute; (ii) that it satisfies the threshold requirements set forth in § 512(i); and (iii) that it satisfies the requirements of § 512(c) itself. *Ventura Content*, 885 F.3d at 603-04. Whaleco meets all the safe harbor requirements, and summary judgment should be granted.

## A. Whaleco Is a Quintessential "Service Provider" Under the DMCA

The first element requires Whaleco to show that it is a "service provider." For purposes of the § 512(c) safe harbor, a "service provider" is "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). This definition encompasses a broad variety of Internet activities, with some courts suggesting that the definition of service provider is so broad that they "have trouble imagining the existence of an online service that would not fall under the definitions." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 658 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) (emphasis omitted); *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 510-11 (S.D.N.Y. 2013), *aff'd in relevant part and vacated in part*, 826 F.3d 78 (2d Cir. 2016). For example, courts have found that providing retail and third-party selling services to Internet users and maintaining computers to govern access to its websites, "fall squarely within the broad scope of the § 512(k)(1)(B) definition of 'service provider.'" *Corbis Corp. v. Amazon.com, Inc*., 351 F. Supp. 2d 1090, 1099-1100 (W.D. Wash. 2004). Similarly, Whaleco's operation of Temu, an e-commerce platform, and marketplace services offered to third-party sellers fall squarely within the definition of "service provider." In fact, Plaintiff did not dispute that Whaleco is a service provider. The June 8 DMCA Notice states that Temu is an alleged service provider. UF ¶ 30.

## B. Whaleco Satisfies the Threshold Requirements of § 512(i)

To satisfy the "threshold" requirements of § 512(i), a service provider (i) must have "adopted and reasonably implemented" a copyright infringement policy that provides for the

termination of "repeat infringers," and (ii) must accommodate and not interfere with "standard technical measures." 17 U.S.C. § 512(i)(1). Whaleco satisfies both of these elements. First, in furtherance of Temu's policy of protecting third-party intellectual property rights, Temu has adopted, implemented, and informed the sellers of its repeat infringer policy. UF ¶¶ 25-27. Temu takes action when necessary and appropriate, including by having mechanisms to prevent sellers from re-registering if they were previously banned under the policy. UF ¶ 27. In appropriate circumstances, Temu will terminate any user who infringes repeatedly. *Id.*

Second, "standard technical measures" are defined as "technical measures that are used by copyright owners to identify or protect copyrighted works." 17 U.S.C. § 512(i)(2). Courts have found that having a policy that included protective measures to stop infringing activity is evidence that a service provider does not interfere with "standard technical measures." *See Kinsley v. Udemy, Inc.*, No. 19-cv-04334-JSC, 2021 U.S. Dist. LEXIS 62885, at *7-8 (N.D. Cal. Mar. 31, 2021). Here, Temu requires its sellers to confirm that none of their products are infringing and has in place a takedown process and a repeat infringer policy. UF ¶¶ 7-8, 23-29. Accordingly, Whaleco satisfies the requirements of § 512(i).

### C. Whaleco Satisfies the Requirements of § 512(c)

A service provider may successfully invoke the safe harbor if it satisfies the requirements of § 512(c). First, the service provider must show that either (1) the service provider does not know of infringement, *or* (2) the service provider acts expeditiously to remove or disable access to the material when it (a) has actual knowledge, (b) is aware of facts or circumstances from which infringing activity is apparent, or (c) has received a DMCA-compliant notice. *See Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1146 (N.D. Cal. 2008). Having demonstrated either (1) or (2), the service provider must also show that (3) the service provider either does not have the right and ability to control the infringing activity, or—if it does—that it does not receive a

financial benefit directly attributable to the infringing activity; and (4) the service provider has designated an agent to receive statutorily compliant notices of claimed infringement. *Id.* at 1146, n.9; *see also* 17 U.S.C. § 512(c).

### 1. Until Receiving the DMCA Notice, Whaleco Did Not Have Actual or Apparent Knowledge of the Alleged Infringements of Trinidad's Works by Third-Party Temu Sellers

As an initial matter, hosting a site with knowledge that infringement could be occurring on a website, particularly where, like here, that website hosts millions of pieces of user-uploaded content, is not sufficient to impute knowledge for an accused infringement of a specific product. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013) (no genuine issues of material fact in part because "general knowledge that [the service provider] hosted copyrightable material and that its services could be used for infringement is insufficient to constitute a red flag."); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 510 (S.D.N.Y. 2008), *aff'd in part*, 600 F.3d 93 (2d Cir. 2010) ("[I]t therefore cannot be said that generalized knowledge of counterfeiting is sufficient to impute knowledge to eBay of any specific acts of actual infringement."). Indeed, there are currently more than 80 million product images available on the Temu platform for the U.S. site, and each day, more than 100,000 images are uploaded on the U.S site of the Temu marketplace. UF ¶ 2. Temu does not and cannot possibly know whether every individual product, photograph, logo, or design is subject to intellectual property protection and/or whether the seller has the necessary authorizations (*see* UF ¶ 19), nor is it Temu's burden to conduct an active investigation of possible infringement. *See Corbis Corp.*, 351 F. Supp. 2d at 1104 (stating Amazon "does not have an affirmative duty to police its users"). In sum, before receiving the June 8 DMCA Notice, Temu had no knowledge of Trinidad's Works and/or any infringements of those Works by third-party sellers on its platform.

### 2. Whaleco Acted Expeditiously to Remove the Material After Receiving the DMCA Notice

Once Temu received a DMCA takedown notice relating to Trinidad's Works on June 8, 2023, Temu took the accused listings down expeditiously while (during the same period) processing thousands of other takedown requests sent by Shein. Courts have found that removal of webpages within a similar time period was expeditious. *See Capitol Records, LLC*, 972 F. Supp. 2d at 535-36 (finding three and a half weeks is expeditious to remove 170 videos); *Obodai v. Demand Media, Inc.*, No. 11 Civ. 2503 (PKC), 2012 U.S. Dist. LEXIS 83109, at *19-20 (S.D.N.Y. June 13, 2012) (finding on summary judgment that 22 days is expeditious). Temu removed the product listings from the June 8 DMCA Notice by July 25, 2023—33 business days after the notice. UF ¶ 32. This is expeditious in light of the thousands of takedown requests Temu received from Shein alone in the weeks leading up to the June 8 DMCA Notice. UF ¶¶ 33-34. For example, in the weeks preceding the June 8 DMCA Notice, Shein requested removal of over 4,500 product listings from the U.S. Temu site. UF ¶ 33. And more than 65% of those product listings included non-clickable links (forcing Temu to manually type in each URL). UF ¶ 36. Additionally, in one particular DMCA notice from May 15, 2023 (addressed during this period) over 560 products on Temu's marketplace were accused of infringement based on one link for a child's swimsuit. UF ¶ 37. But most of the listings were for products different from a child's swimsuit. *Id.* Accordingly, Temu acted expeditiously under the circumstances to remove the accused links along with all of Shein's other DMCA notices.

### 3. Whaleco Does Not Have the Right or Ability to Control the Activity of Third-Party Temu Sellers

Under the second element, a service provider will lose the protection of § 512(c)'s safe harbor where it (a) has the right and ability to control the infringing activity and (b) receives a financial benefit directly attributable to such activity. 17 U.S.C. § 512(c)(1)(B). This two-step

prong requires that "[b]oth elements must be met for the safe harbor to be denied." *Io Grp., Inc.*, 586 F. Supp. 2d at 1150. Therefore, on summary judgment, where a service provider does not have the right and ability to control the infringing activity, the Court need not address whether the service provider received a direct financial benefit. *See id.*; *Corbis Corp.*, 351 F. Supp. 2d at 1110.

That Whaleco has the right and ability to control the Temu platform, does not mean it has the right and ability to control infringing activity; "the two are not one and the same." *Io Grp., Inc.*, 586 F. Supp. 2d at 1151. Importantly, Whaleco lacks the "right and ability to control" the activity of third-party sellers on Temu. Courts have held that the right and ability to control infringing activity, "cannot simply mean the ability of a service provider to block or remove access to materials posted on its website or stored on its system." *Id.* (collecting cases). "To have the right and ability to control, a service provider must be able to exert 'substantial influence' on its users' activities." *Ventura Content, Ltd.*, 885 F.3d at 613; *UMG Recordings, Inc.*, 718 F.3d at 1030 (finding "substantial influence" when a platform has "high levels of control over activities of users").

Here, third-party sellers, not Temu, control which goods they list for sale, the product information that is displayed to consumers, and the product images associated with each listing. UF ¶¶ 4-5. Additionally, sellers retain title to their products at all times during the product's lifecycle. UF ¶ 14. Further, the SSA and related agreements—to which all sellers are bound—expressly prohibit third-party sellers from posting infringing material. UF ¶¶ 7-8, 12. Per the SSA, Temu has the right to terminate a seller's account, store, and the SSA should the seller breach its terms or the seller's representations and warranties (including Temu's prohibition on any infringing and counterfeit content on the platform). UF ¶ 26. As detailed in the chart below, the practices and policies used by the Temu platform have been consistently found by courts to be

typical of marketplaces (including Amazon) such that the platform is eligible for safe harbor protection.

| Temu Practice | Supporting Case Law |
|---|---|
| Product listing pages on the Temu platform are populated solely with information and images provided by the seller. UF ¶¶ 4-5. | *Corbis Corp.*, 351 F. Supp. 2d 1090 (finding on summary judgment that Amazon satisfied the threshold conditions for DMCA protection and all of the requirements for protection under the § 512(c) safe harbor where there is no indication that Amazon intended to select infringing material for its site, Amazon is not in possession of the product, does not edit the product descriptions, or otherwise involve itself in the sale); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) (granting Amazon's motion for summary judgment where Amazon was not involved in the listing, bidding, or sale of the product but merely provided the forum for an independent third-party seller to list and sell merchandise). |
| Temu's pre-listing screening is purely cursory, identifying offensive, dangerous, or obviously infringing content. UF ¶ 16. Temu's industry-accepted pre-listing process does not aim to dictate or control which products are sold or which images are uploaded or displayed to sell the products. UF ¶¶ 16-17, 20. | *BWP Media USA, Inc. v. Clarity Digit. Grp., LLC*, 820 F.3d 1175, 1181 (10th Cir. 2016) (affirming summary judgment in favor of defendant and stating "if the infringing content has merely gone through a screening or automated process, the ISP will generally benefit from the safe harbor's protection"); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 556 (4th Cir. 2004) (affirming summary judgment for service provider where employees conducted "cursory" reviews of user-uploaded photographs for copyrighted and duplicate material). |
| Temu, through its affiliate, Yucan, provides fulfillment services, such as product storage and shipping. UF ¶ 13. | *Milo & Gabby, LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 886 (Fed. Cir. 2017) (affirming summary judgment in Amazon's favor and concluding Amazon is not the seller where Amazon held the product for a time in its "warehouse for storage and Amazon boxed up and shipped the product when a sale was consummated on the website"). |
| Sellers retain title to their goods throughout the product lifecycle on Temu. UF ¶ 14. | *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015) (granting summary judgment for Amazon and rejecting contention that Amazon is liable for trademark infringement based on its sales and shipment of physical items in part because third-party sellers retain full title to and ownership of the |

| | inventory sold by the third party and plaintiffs provided no evidence to the contrary). |
|---|---|

Because the undisputed facts establish that Whaleco does not have the right and ability to control the infringing activity of third-party sellers on the Temu platform, the Court need not proceed to the second step of evaluating the financial benefit element. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 n.15 (9th Cir. 2007); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2001).

### 4.       Whaleco Has Designated a DMCA Agent

Whaleco must provide on its website and to the Copyright Office (1) the name, address, phone number, and electronic mail address of the agent and (2) other contact information which the Register of Copyrights may deem appropriate. 17 U.S.C. § 512(c)(2). Whaleco has designated an agent under the DMCA. The agent is listed on Temu.com along with the address and email for contacting the agent. UF ¶ 29. Whaleco also provided this same information to the United States Copyright Office, which is listed in the DMCA designated agent directory. *Id.*

### <u>CONCLUSION</u>

For the above reasons and authorities, summary judgment should be granted in Whaleco's favor on all claims.

Respectfully submitted,

*/s/ Thomas Cull*
Thomas M. Cull (Illinois Bar No. 6331606)
WHITE & CASE LLP
111 S. Wacker Dr.
Suite 5100
Chicago, IL 60606
(773) 330-9427
Thomas.Cull@whitecase.com

Anna B. Naydonov (*pro hac vice* pending)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202)-626-3600
Anna.Naydonov@whitecase.com

*Counsel for Defendant Whaleco, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, a copy of *Memorandum in Support of Whaleco, Inc.'s Motion for Summary Judgment* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

<div style="margin-left:40%">

*/s/ Thomas Cull*
Thomas Cull

</div>