1    **TRANSCRIPTION OF DIGITAL RECORDING**

2         IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

3

   TIM LORD,                          )  Case No. 23-CV-4729
4                   Plaintiff,        )
        v.                            )  STATUS HEARING
5                                     )
   PDD HOLDINGS, INC., a Cayman       )  (held via
6  Islands Corporation, WHALECO,      )  teleconference)
   INC., a Delaware Corporation,      )
7  and DOES 1-10,                     )  Chicago, Illinois
                   Defendants.        )  Date:  January 18, 2024
8  ---------------------------        )  Time:  11:00 a.m.
   ZHIHAN WANG,                       )
9                   Plaintiff,        )
        v.                            )  Case No. 23-CV-4760
10 PDD HOLDINGS, INC., et al.,        )
                   Defendants.        )
11 ---------------------------        )
   TAVIA MILBURN,                     )
12                  Plaintiff,        )
        v.                            )  Case No. 23-CV-4785
13 PDD HOLDINGS, INC., et al.,        )
                   Defendants.        )
14 ---------------------------        )
   VINCENT TRINIDAD,                  )
15                  Plaintiff,        )
        v.                            )  Case No. 23-CV-4786
16 PDD HOLDINGS, INC., et al.,        )
                   Defendants.        )
17 ---------------------------        )
   ILUSTRATA SERVICOS DESIGN,         )
18 LTDA.,                             )
                   Plaintiff,         )
19      v.                            )  Case No. 23-CV-4824
   PDD HOLDINGS, INC., et al.,        )
20                 Defendants.        )

21 _____

        AUDIO TRANSCRIPTION OF RECORDED STATUS HEARING
22             HELD VIA VIDEOCONFERENCE BEFORE
        THE HONORABLE MAGISTRATE JUDGE BETH W. JANTZ
23            UNITED STATES MAGISTRATE JUDGE
   _____

24
           (Appearances on the next page.)
25
   TRANSCRIBER:    Annette Montalvo, 312-818-6683

```
1                    A P P E A R A N C E S

2

3   For the Plaintiffs:    Palak Patel, Esq.
                           Elizabeth A. Austermuehle, Esq.
4                          Jayaram Law, Inc.
                           125 South Clark Street, Suite 1175
5                          Chicago, Illinois  60603
                           312-212-8676
6                          (appeared via teleconference)

7   For the Defendants:    Anna Naydonov, Esq.
                           White & Case LLP
8                          701 13th Street, NW
                           Washington, DC  20005
9                          202-637-6197
                           (appeared via teleconference)
10                              -and-
                           Thomas Cull, Esq.
11                         White & Case
                           111 South Wacker Street, Suite 5100
12                         Chicago, Illinois  60606
                           312-881-5439
13                         (appeared via teleconference)

14  For the Defendants:    Brian A. Verbus, Esq.
                           Garret A. Leach, Esq.
15                         Kirkland & Ellis LLP
                           300 North LaSalle Street
16                         Chicago, Illinois  60654
                           312-862-2000
17                         (appeared via teleconference)

18

19

20

21  Proceedings recorded by Liberty digital-recording system;
    transcript produced by audio transcription.
22
    ─────────────────────────────────────────────────────────
    Transcriber:           Annette M. Montalvo, CSR, RDR, CRR
23                         Official Court Reporter
                           United States Courthouse, Room 1902
24                         219 South Dearborn Street
                           Chicago, Illinois  60604
25                         312-818-6683
```

1    (Proceedings commenced at 11:01 a.m., in open court, via

2  teleconference, and are transcribed from a Liberty audio

3  recording, to wit:)

4          THE COURTROOM DEPUTY:  Calling case 23-Civil-4729,

5  *Lord v. PDD*.

6          23-Civil-4760, *Wang v. PDD*.

7          23-Civil-4785, *Milburn v. PDD*.

8          23-Civil-4786, *Trinidad v. PDD*.

9          And, lastly, 23-Civil-4824, *Ilustrata v. PDD*.

10          THE COURT:  Good morning, everyone.  This is Judge

11  Jantz.  I'll have everyone put their introductions on the

12  record.  We will start with plaintiffs' counsel first.

13          MS. PATEL:  Good morning, Your Honor.  Palak Patel

14  from Jayaram Law, on behalf of the plaintiffs, along with my

15  colleague Elizabeth Austermuehle.

16          THE COURT:  Okay.  How about for the defense?

17          MS. NAYDONOV:  Good afternoon, Your Honor.  We have

18  Anna Naydonov and Thomas Cull from White & Case.

19          MR. VERBUS:  Good morning, Your Honor.  Brian Verbus

20  and Garret Leach from Kirkland & Ellis on behalf of the

21  defendants.

22          THE COURT:  Okay, great.  Thanks, guys, for calling

23  in.

24          So I know you have quite a bit going with Judge

25  Coleman in terms of motion practice, and I know you have the

1  motion to stay with us, which we have under advisement.

2  But what I wanted to check in on is from some of the

3  filings, it seemed that there might be some interest in

4  settlement talks.  So I just wanted to get everyone's thoughts

5  on that.  If there was, we could plan for that.  If not, we

6  will go forward with the motion practice, but sort of throw

7  that open to the folks' thoughts on whether or not a

8  settlement conference might be possible or fruitful at this

9  point.

10  MS. PATEL:  Your Honor, this is Palak Patel on behalf

11  of the plaintiffs.

12  THE COURT:  Sure.

13  MS. PATEL:  So we have engaged in some settlement

14  discussions, but plaintiffs had sent a demand on December 13,

15  and we received a counter from defendants on January 16.

16  So we're still sort of discussing this with our

17  clients and considering the offer.  But we do think a

18  settlement conference would be helpful, if we had some

19  preliminary discovery to kind of go with it, mostly documents

20  kind of showing sales figures of the products mentioned in our

21  complaint.  And so, you know, we do think it could be helpful

22  for some of the plaintiffs.

23  THE COURT:  Okay.  What's the defense's perspective?

24  MS. NAYDONOV:  Thank you, Your Honor.  This is Anna

25  Naydonov with White & Case.

1    We also believe that a settlement conference will be

2    helpful, and we come prepared with some dates, as Your Honor

3    requested, that we can share.

4    We do, however, believe that no additional discovery

5    is needed before the settlement conference happens.  As we

6    made clear in our summary judgment and the prior discovery

7    responses, most of these cases, except for one, involve zero

8    or one or two units of product sold.  So there's really no

9    sales figures, or no additional sales figures to share, except

10   for the *Trinidad* case, in which there is also a pretty minimal

11   number of units sold that have been -- those numbers have been

12   shared already with plaintiffs.

13   So to the extent, you know, there's any additional

14   information kind of narrowly tailored that Your Honor may

15   request to provide for the settlement conference, of course,

16   we will do that.

17   But, you know, as outlined in our motion to stay, and

18   upcoming oppositions to the Rule 56(d) motion, we believe

19   everything is already on record for what's needed to both

20   dispose of the cases and have a productive settlement

21   conference.

22   THE COURT:  What were the demands and offers that

23   were exchanged?  Where do they stand in terms of the figures?

24   MS. NAYDONOV:  Your Honor, I can start, and my

25   colleagues on the other side can correct me if I miss

1  anything.

2      So the proposed figures were -- that we got in

3  December were in the range from like 50,000 to 100,000 dollars

4  per plaintiff.  They varied -- you know, couldn't really

5  understand the rationale, honestly, for the figures, given

6  that there are no sales or one or two units of products sold

7  behind those.  And in two of the cases, because the work was

8  registered after the alleged infringement, there is no

9  entitlement to attorneys' fees.  But, of course, we understand

10 that it is a settlement conference, we're trying to settle the

11 cases before we both spend on further briefing and other legal

12 proceedings, which is expensive for both sides.  So --

13      MR. LEACH:  Anna?  This is Garret Leach.  Sorry.

14      Before we continue with any sort of settlement offer

15 we may have made, I just want to make sure with the Court that

16 this is a confidential -- like, this is going to be in the

17 public record?

18      THE COURT:  We can go off the record, if you want.

19 That's totally fine.

20      MR. LEACH:  Yeah, I think if we are going to get into

21 numbers, we probably should.

22      THE COURT:  That's fine.  No problem.  Yes, sure.

23 That's no problem.

24      Okay.  We will take care of that.

25   (Pause in audio recording from 11:07 a.m. to 11:10 a.m.)

1     MS. PATEL:  At this time, he does not want to

2  participate in the settlement conference.

3     MS. NAYDONOV:  But we believe that no further

4  discovery should be happening, so if that's a prerequisite to

5  having a settlement conference, from plaintiffs' perspective,

6  then, you know, we have our pending motion to stay and our

7  opposition to the Rule 56(d) motion, so our position, no

8  further discovery should be happening.

9     And on the second point, we're really looking for,

10  hopefully, a global resolution because we view these as

11  related cases.  So that's news to us that there's someone

12  who's not interested in participating in the settlement

13  conference.  We would like to know who that is, and that may

14  also impact whether we want to go forward.

15     THE COURT:  Yeah, and it would impact my willingness

16  to do four out of the five, or whatever it is, as well.

17  Because there is an extent to which -- right.  The reason we

18  do settlement conferences is twofold.  I mean, there's other

19  witnesses.  But, one, it is good for the parties, right, it's

20  a good way to resolve things.  Number two, though, it is also

21  good for judicial resources, right.

22     So even if we settle four out of the five, it still

23  means Judge Coleman's got to, you know, do all her motion

24  practice and whatever is before us, that, you know, the

25  balance turns a little bit.  Doesn't mean we wouldn't do it,

1   but it's a harder sell to set aside, you know, four half days

2   or four full days if it doesn't help to move the docket along.

3   Again, it is not a -- doesn't mean we wouldn't, but it's a

4   little bit more uphill at that point.

5         Let me just ask, generally, when the plaintiffs say

6   we'd like a little more discovery, if you can give -- not a

7   ton of detail, but just give a little flavor of what you're

8   talking about there, because, you know, if it's minimal, maybe

9   the defendants are willing to do it, but if -- I realize

10  they'd ask for a stay.  So if you'd just kind of give a flavor

11  of what you're looking for there.

12        MS. PATEL:  Certainly, Your Honor.  This is Palak

13  Patel on behalf of the plaintiffs.

14        So what we're really looking for, for just purposes

15  of a settlement conference, would be sales figures.  You know,

16  as defendants indicated, they disclosed some information

17  regarding sales in the interrogatory responses, but, you know,

18  our position is that the answer is incomplete.  The discovery

19  responses are framed in a way that makes it hard for us to

20  feel comfortable that the full extent of the sales have been

21  disclosed, and, further, we haven't seen any documents to that

22  point, just written discovery responses.

23        And I think the other point of confirmation we'd like

24  is regarding any other product besides those identified in the

25  complaint that they're -- you know, the plaintiffs'

1  copyrighted works.

2       Defendants haven't provided this information, and it

3  is not something that we can easily search on Temu's website.

4       And so I think those are the two sort of main points

5  that would help sort of further settlement discussions.

6       THE COURT:  Okay.  What's the defense's point on

7  those requests?

8       MS. NAYDONOV:  Your Honor, as I mentioned, in four --

9  well, we provided the sales figures that we have.  So we're

10  not sure what else is needed there.  There were no sales for

11  one or two units in four out of five cases.  And we provided

12  the sales information for the fifth one, which was also, as I

13  said, pretty minimal number of units sold.

14       So we're not exactly sure, like we can't provide

15  information on sales that do not exist for further

16  information.  So that's on the sales point.

17       On the second point is, to the extent -- as far as I

18  understood, plaintiffs are seeking clarification on whether

19  there are any other pieces of the accused work on the Temu

20  website by third party sellers or if there are any other sales

21  of products.

22       As we have repeatedly said in summary judgment and in

23  discovery communications with plaintiffs, we are not aware of

24  any other uses of those images on the platform, we're not

25  aware of any other sales.  We, you know, consistent with that,

1    we have not gotten any takedowns from plaintiffs or someone on

2    their behalf.  (Inaudible) they have not (inaudible) initial

3    instances, they haven't seen anything or sent us takedowns for

4    anything else.

5         So there is nothing else to provide, from our

6    standpoint, on those two issues.

7         THE COURT:  Okay.  So given those representations,

8    what is -- I mean, there's nothing else that can be provided.

9    What is the plaintiffs' perspective at that point?  If it

10   doesn't exist, it doesn't exist.

11        MS. PATEL:  This is Palak Patel on behalf of the

12   plaintiffs.

13        Your Honor, I guess what we're trying to kind of

14   resolve is that, you know, in the screen shots attached to our

15   complaint, there was indication saying that more items were

16   sold than is being represented in the interrogatory responses.

17   And so I guess that's why we're trying to figure out what the

18   actual sales information is.  For example, for plaintiff

19   Zhihan Wang, screen shots show that there was 122 items sold.

20   And that's not the answer that we're sort of getting in the

21   interrogatory response.

22        THE COURT:  What's the defense's response on that?

23        MS. PATEL:  And so it --

24        THE COURT:  We'll just go one at a time.  I

25   appreciate the examples, so that's good.

1          So what's the defense's response?  As an example,

2     that's what plaintiffs have pointed out here.

3          MS. NAYDONOV:  Oh, Your Honor, we would --

4          MS. PATEL:  Sorry, Your Honor.  This is Palak Patel

5     on behalf of the plaintiffs.  I misspoke.  It was on behalf of

6     plaintiff Ilustrata, not Zhihan Wang.

7          THE COURT:  Okay.  That's helpful.  Thanks for that.

8          Okay.  Go ahead.

9          MS. NAYDONOV:  So, Your Honor, that is the first time

10    we're hearing that's on the sales figures so I cannot fully

11    respond off of that.  But there may be various -- like

12    maybe -- I am not sure what plaintiffs' counsel is referring

13    to.  Is that the exact same file that was sold, or sometimes,

14    as we know on these various platforms, there are products for

15    use or there are items sold that may have a different graphic

16    on the same T-shirt.  So we can look into that, but, you know,

17    in terms of the units sold with that specific graphic, we

18    pulled the information from the client's internal systems.  I

19    am happy, for this specific question, to look into Ilustrata

20    and the 122 that they're referencing.  But that's the first

21    time we're hearing it.

22         THE COURT:  Okay.  Why don't we do it -- why don't we

23    do this.

24         So a couple things.

25         One, why don't the parties take some time to do a

1 meet and confer on just this issue of -- I mean, obviously,

2 you can talk about anything you'd like to talk about, but

3 focus on the issue of what plaintiffs view as necessary to do

4 a settlement conference, with the kind of specificity that you

5 guys just went back and forth on.  Totally appreciate from the

6 defense standpoint, you need to look into things, and so I am

7 going to give you the time to do that.  And I think it would

8 be good to have a dialogue on that.

9          Because as I said, I certainly appreciate the

10 defense's position, you know, we'd rather not provide any

11 more.  I also appreciate the plaintiffs' position, hey,

12 there's certain things we feel like we need in order to be

13 able to do a settlement conference.  And I don't do them

14 unless everyone wants to because it is just not fruitful.  So

15 maybe you can come to some common ground.

16          Additionally, I appreciate it's the defense's

17 perspective that if only four of the five plaintiffs are

18 interested, maybe this isn't going to work, from their

19 perspective.

20          And then, you know, perhaps we can set up something

21 where you're able to talk numbers with me, if one side or the

22 other wants to set up a conference call line or you can be

23 sure it's just us on the line, that would be fine as well.

24 But that's kind of my inclination at this point is to have you

25 talk a little bit more, and then come back, and we'll see if

1  it makes sense to start setting dates.

2  Does that work for everyone?

3  MR. LEACH:  Your Honor, this is Garret Leach.

4  THE COURT:  Sure.

5  MR. LEACH:  Since I was the one that had the

6  confidentiality issue --

7  THE COURT:  Yeah.

8  MR. LEACH:  -- would it be helpful to the Court if we

9  filed a confidential document with you, kind of setting out

10  the settlement positions at this point, so that you have that?

11  THE COURT:  I don't mind that, but I like to -- I

12  mean, that would be helpful, but I also like to just talk and

13  go back and forth.  I think it's really -- I think we've

14  already made progress today in terms of, okay, what are both

15  sides looking for.

16  So I guess I'd rather just do a quick conference call

17  after you guys have had time to talk about the discovery

18  issues, if that's okay.  I appreciate the offer, but I prefer

19  to just have a conversation, if everyone doesn't mind calling

20  in sometime.

21  MR. LEACH:  That's fine, Your Honor.  Whatever's best

22  for the Court.

23  MS. PATEL:  We --

24  MS. NAYDONOV:  Your Honor --

25  THE COURT:  Don't worry.  I won't cut anyone off.  So

1  whoever wants to go next, state your name, and I will

2  recognize you, and I won't cut anyone off.

3         MS. NAYDONOV:  Your Honor, Anna --

4         MS. PATEL:  Go ahead, Anna.

5         MS. NAYDONOV:  Thank you.

6         Anna Naydonov from White & Case for defendants.

7         Your Honor, it would be helpful if the other side let

8  us know who is the party that doesn't want to do the

9  conference.  Is that possible to learn during this call?

10        THE COURT:  Is that okay with plaintiffs' counsel?

11        MS. PATEL:  Yes, Your Honor.  This is Palak Patel on

12 behalf of plaintiffs.

13        So at this time, Mr. Vincent Trinidad has decided he

14 does not want to participate in the settlement conference.

15 However, there's other (inaudible) issues (inaudible) in the

16 Philippines, and so there's like a 14 hour time difference.

17 That would kind of make the issue difficult.

18        So, yes, Your Honor, at this time he's not the one

19 interested, but, you know, he is amenable to continuing

20 settlement discussion and seeing kind of where they land.

21        THE COURT:  And so is he --

22        MS. PATEL:  But otherwise --

23        THE COURT:  Is his objection to doing it because of

24 the logistics of it?  Because we can work around that.

25        MS. PATEL:  It is both logistics, and he's indicated

1    that, you know, similar to what we said before, he'd

2    appreciate more information regarding the sales before

3    committing.  Mr. Trinidad had a few more copyrights implicated

4    in his complaint than the other plaintiffs.  So he'd still

5    like to discover more information on that and explore that

6    aspect first.

7         THE COURT:  All right.  Well, I know you guys are

8    going to talk about the discovery piece.  What I can tell

9    everyone here is just as you speak with your clients about

10   logistics, at least for me, I offer both in person as well as

11   video settlement conferences, and I am certainly sensitive to

12   different time zones, and so if we need to do something -- I

13   mean, it's not like I haven't done a settlement conference at

14   night or early in the morning.  We can figure it out, right?

15   And so I would just encourage your client that if that's part

16   of the sticking point, we're not going to make him do it at

17   2:00 a.m. his time.  We'll figure out something that works for

18   everyone.  And we can do it by video, which is pretty easy.

19        I realize there might be other issues, too, but I

20   just throw that out there that we've got some flexibility on

21   that.

22        MS. PATEL:  Thank you, Your Honor.  We'll certainly

23   relay that to him.

24        THE COURT:  Okay.  All right.

25        MS. PATEL:  But we're amenable to meeting and

1  conferring with the defendants and coming back to you and

2  seeing if a settlement conference is the best option.

3          THE COURT:  Okay.  How about on the defense side?

4          MS. NAYDONOV:  Nothing further from us, Your Honor.

5  We'll meet and confer with the other side.  I would like to

6  just emphasize once again, Mr. Trinidad is -- if that's the

7  only case where there are more than one or two or zero units

8  of sales, you know, we'd need to consult with our clients,

9  obviously, but I think they would have very limited interest,

10  that if that is the case, that we're not having a settlement

11  conference on.

12          THE COURT:  Yeah, I mean, understood.  I would say,

13  you know, just encourage everyone to talk with their clients

14  about how expensive this is going to be, given what I am

15  hearing are the relative numbers, right?  The expense

16  litigation.  So, you know, bills may stack up quicker than

17  perhaps we can get it settled for.

18          But how long would everyone like to talk between

19  yourselves and with your clients?  What's like a comfortable

20  amount of time to do that?

21          MS. NAYDONOV:  Anna Naydonov --

22          MS. PATEL:  This is Palak Patel on --

23          MS. NAYDONOV:  Go ahead.

24          MS. PATEL:  Sorry.  This is Palak Patel on behalf of

25  the plaintiffs.

1          We believe that a few weeks should be sufficient.

2          THE COURT:  Does that work with --

3          MS. NAYDONOV:  We agree, Your Honor.

4          THE COURT:  Okay, all right.  We will do that.

5          And then particularly for the defense side,

6   Mr. Leach, do you guys want to provide us a conference call

7   line where you can feel totally comfortable that it's totally

8   offline?  Is that something you want to do?

9          MR. LEACH:  Yeah, we can certainly do that,

10  Your Honor.

11         THE COURT:  Okay.  Great.

12         So just we'll pick a date together that works for

13  everyone, and then just in advance of that, if you can

14  circulate it to your colleagues on your side and the other

15  side of the aisle, and get it to my courtroom deputy, AJ, and

16  then we'll be happy to do that, once requested.

17         Let me throw some two-week dates at you, and then

18  just so you kind of have a sense of where I am booking right

19  now, so we're booking -- we are pretty up to date.  We are

20  booking about a month out in February.  We have got the latter

21  part of February -- oh, that's almost exclusively video in

22  February, because I am going to be working remotely but still

23  working.  And then we've got the early part of March, and then

24  the latter part of March.  That's kind of where we're at at

25  this point, just in terms of thinking about what the timing

1    would be.

2         But let's pick a two-week date for everyone to talk

3    between yourselves, meet and confer, talk with your clients.

4    Just want to emphasize again so, you know, how I view the

5    settlement process is a completely voluntary one.  And so if

6    someone says they don't want to do it, or they won't do it

7    without X, Y, or Z, then we won't.  And that's okay.  I mean,

8    I'd rather that we take a shot at it, but we've got to have

9    buy-in on both sides to do it.  So talk about that.

10        Let me get you a date here, guys.  I will start

11   seeing if that works for everyone.

12        Hang on a second.

13        Could everyone do Friday, February 2, at 11:00 a.m.?

14   And let me ask a question here:  Particularly on our defense

15   side, although maybe on the plaintiffs' side as well, do we

16   have folks on Pacific time zone and is that okay, 11:00?

17        MS. NAYDONOV:  Your Honor, is it just lawyers or

18   would you like clients?

19        THE COURT:  Just lawyers at this point.  Just lawyers

20   at this point.

21        MS. NAYDONOV:  Just lawyers?

22        THE COURT:  Yes.

23        MS. NAYDONOV:  Then we're all Eastern or Chicago

24   time.

25        THE COURT:  Oh, okay.  Okay.  I saw some appearances

1  from Pacific.

2        But does that -- how about for the plaintiffs' side,

3  does February -- Friday, February 2, at 11:00 a.m. work?

4        MS. PATEL:  Yes.  This is Palak Patel on behalf of

5  the plaintiffs.

6        The time zone is fine.  Is it -- and the date is

7  fine.  Is it possible to do a little earlier?  Would you have

8  another status conference at 11:30?  And, you know, we want to

9  be able to dedicate sufficient time to this.

10        THE COURT:  Sorry, I just didn't understand the last

11  part of what you said.

12        MS. PATEL:  Oh.  Will you have another status at

13  11:30?

14        THE COURT:  Oh, okay.  Yes.  I can do like 9:30?

15  Does that work for everyone?  That same day, February 2, 9:30?

16        MS. PATEL:  Yes, Your Honor --

17        MR. LEACH:  Your Honor, this is --

18        MS. PATEL:  -- on behalf of plaintiffs, that works.

19        THE COURT:  Okay.

20        Go ahead.  I think there was --

21        MR. LEACH:  Yeah, this is Mr. Leach.

22        THE COURT:  Sure.

23        MR. LEACH:  I'm going to say, I'm not an essential

24  party here, so if the White & Case folks and Mr. Verbus from

25  our office can make it.  I can't do it on the 2nd, I can do it

1  the following week.  But, again, I'm not an essential party so

2  to the extent it works for everyone else, don't worry about

3  me.

4         THE COURT:  Okay.  How about for White & Case and

5  Kirkland, does that work, Friday, February 2, at 9:30,

6  Central?

7         MS. NAYDONOV:  That works for White & Case.

8         THE COURT:  Okay.

9         MS. NAYDONOV:  Next week (inaudible).

10         MR. VERBUS:  And this is Brian Verbus with Kirkland.

11  That works for me as well.

12         THE COURT:  And, sorry, just for the White & Case

13  folks, did you say that worked okay?

14         MS. NAYDONOV:  Yes.  That works.

15         THE COURT:  Okay.  Great.

16         All right.  So we'll do that.  Friday, February 2,

17  9:30, Central.  And then we'll just ask the defense side, as I

18  said, to circulate a good call-in number, and then we'll use

19  that.  And happy to use that for any and all telephonic

20  settlement discussions.  When people request it, happy to do

21  that so everyone can feel totally comfortable that way.

22         Okay.  Anything else from the plaintiffs' team?

23         MS. PATEL:  No, Your Honor.  Thank you.

24         THE COURT:  Okay.  How about from the defense?

25         MS. NAYDONOV:  No, Your Honor.  Thank you.

1     THE COURT:  Okay.  Great.  Thanks for talking it

2  through, guys.  I'll talk to you in about two weeks.

3     MS. PATEL:  Thank you, Your Honor.  Have a nice day.

4     MS. NAYDONOV:  Thank you.

5     THE COURT:  Bye bye.  See you.

6   (Proceedings concluded at 11:28 a.m.)

7

8

9                    * * * * *

10

## REPORTER'S CERTIFICATE

11

12        I, ANNETTE M. MONTALVO, certify that the foregoing is
   a correct transcript from the digital recording of proceedings
   in the above-entitled matter to the best of my ability, given
13  the limitations of using a digital-recording system.

14        Dated this 29th day of January, 2024.

15  /s/Annette M. Montalvo_____
   Annette M. Montalvo, CSR, RDR, CRR
16  Official Court Reporter

17

18

19

20

21

22

23

24

25